22

Edward J. Klavon and Barbara M. Klavon, Appellants, *v.* Zoning Hearing Board of Marlborough Township, Appellee, and Russell Boyer and Florence Boyer, his wife, Intervening Appellees.

Argued April 4, 1975, before Judges KRAMER, WIL-KINSON, JR. and BLATT, sitting as a panel of three.

*William R. Cooper*, with him *Stewart J. Greenleaf*, for appellants.

*Frederic M. Wentz*, with him *McGrory, Scirica, Wentz & Fernandez*, for appellee.

*Edward F. Kane*, with him *Bean, DeAngelis, Kaufman & Kane*, for intervening appellees.

OPINION BY JUDGE KRAMER, June 20, 1975:

This is an appeal by Edward J. Klavon and Barbara M. Klavon (Klavon) from an order of the Court of Common Pleas of Montgomery County, dated July 8, 1974, which affirmed an order of the Marlborough Township Zoning Hearing Board (Board). The Board's order granted a building permit to Russell Boyer (Boyer) for the construction of a greenhouse and storage building on his property. The Klavon residence adjoins Boyer's property and Klavon opposes the proposed construction.

In 1969 Boyer's predecessor in title was granted three variances from the 1958 Marlborough Township (Township) zoning ordinance (since amended). These variances

were sought for the construction of three greenhouses of 20,000, 20,000 and 40,000 square feet. Klavon opposed these variances, and the matter culminated in a decision by the Court of Common Pleas of Montgomery County on August 6, 1970. The lower court there held that the Board had erred in granting all three variances. The variance for the first 20,000 square foot greenhouse was denied, because the court viewed its construction as a permitted use under the agricultural-residential classification then applicable to the entire municipality. In effect, the court held that no variance was required. As to the second and third greenhouses, the court concluded that the requisite hardship had not been shown, that construction would violate area and side-yard requirements, and that one of the greenhouses was proposed for land which the applicant did not own. During this prior litigation one greenhouse (referred to by the parties as the "first greenhouse") was actually built, but it covered an area of only 9,840 square feet instead of the 20,000 square feet contemplated by the original variance application. From the record it appears that no further appeal was taken in the prior case.

Boyer's predecessor defaulted on his mortgage payments, and title to the property eventually passed to Boyer. Boyer applied for a permit to build a new greenhouse (covering 8,000 square feet) and an adjacent storage room (covering 1,600 square feet). The permit was granted on May 30, 1973, and Boyer thereafter spent in excess of $10,000 in anticipation of construction. Upon the protest of Klavon, on August 3, 1973, the permit was revoked. It was reinstated by the Board after hearing on October 19, 1973. Klavon appealed this reinstatement to the lower court and now appeals to us.

Our scope of review in cases where the lower court has not taken additional evidence nor made independent findings of fact is limited to a determination of whether the Board abused its discretion or committed an error of

law. *Camaron Apartments, Inc. v. Zoning Board of Adjustment of the City of Philadelphia,* 14 Pa. Commonwealth Ct. 571, 324 A.2d 805 (1974) and *Rothrock v. Zoning Hearing Board of Whitehall Township,* 13 Pa. Commonwealth Ct. 440, 319 A.2d 432 (1974). The Board concluded alternatively that Boyer (1) is validly expanding a nonconforming use and (2) has acquired a "vested right" which precludes the Township from revoking the permit. The lower court sustained the Board on the nonconforming use theory and made no comment on Boyer's assertion of a vested right.

We note initially that Klavon has not challenged the lower court's prior determination that the existing greenhouse was permitted as a matter of right under the 1958 ordinance.[1]

In 1970 the old ordinance was repealed and replaced with a totally new zoning ordinance.[2] Boyer's property is located in an "RA-1" zoning district. The new ordinance reads, in relevant part, as follows:

"In RA-1 Residential Agricultural Districts, the following regulations shall apply:

"SECTION 400. Use Regulations. A building may be erected, altered or used, and a lot may be used or occupied, for any of the following purposes, and no other:

\*    \*    \*

"B.    Agriculture.

"C.    Any of the following uses when authorized as a special exception:

\*    \*    \*

---

1. We doubt whether such a challenge could have been made in light of the doctrine of collateral estoppel. *See McCarthy v. Township of McCandless,* 7 Pa. Commonwealth Ct. 611, 300 A. 2d 815 (1973) and *Restatement of Judgments* §70 (1942).

2. The record in this case does not include the language of the 1958 ordinance, and we are thus left without any means of comparing the two versions of the ordinance.

"13. Greenhouses (non-commercial)."

Section 2500 of the ordinance contains definitions[3] and reads, in pertinent part:

> *"Agriculture.* The cultivating of the soil, and the raising and harvesting of the products of the soil, including, but not by way of limitation, nursery, horticulture[4] and forestry, and animal husbandry.

Klavon urges us to hold that commercial greenhouses are not permitted under the statutory language quoted above, the argument being that the specific provisions, allowing (only) noncommercial greenhouses (and even then by special exception), preclude us from finding a permitted use under the rather broad general definition assigned to "agriculture."

This argument has superficial appeal, but loses its force when the entire ordinance is examined. We note, for example, that section 500, providing for a "Cluster Overlay Residential District," provides in its description of permitted uses as follows:

> "B. Agriculture or horticulture, but excluding the commercial keeping or handling of farm stock or poultry *or commercial greenhouses* or establishments for sale of farm or horticultural products." (Emphasis added.)

If commercial greenhouses were not deemed to constitute an agricultural use, their exclusion in this section would not be necessary. Another provision of the ordinance, section 2005 (A), dealing with accessory uses, specifically lists "greenhouses" as a "use accessory to agriculture."

---

3. A greenhouse is clearly a "building" under the definition of that term as provided in section 2500.

4. "Horticulture" is defined by *Webster's Third New International Dictionary* (1971) as "the cultivation of an orchard, garden, or nursery on a small or large scale," or "the science and art of growing fruits, vegetables, flowers, or ornamental plants." Boyer's operation contemplates the commercial production of vegetables and flowers for wholesale distribution.

In *Klein Appeal,* 395 Pa. 157, 149 A. 2d 114 (1969), the Supreme Court was faced with an application for the construction of a commercial greenhouse in a district which permitted "farm" use. The term "agriculture" seems at least as broadly descriptive as the term "farm," and in *Klein* the Supreme Court affirmed the lower court's determination that a workshop and greenhouse were permitted as a "farm" usage. The Court noted that "[w]hen an ordinance permits an owner to use his property as a farm, the ordinance by necessary implication permits the use of the lot for such agricultural specialties as its size will permit." 395 Pa. at 160, 149 A. 2d at 116. *See also Marple Township v. Lynam,* 151 Pa. Superior Ct. 288, 30 A. 2d 208 (1943).

We conclude that when the ordinance in the instant case is viewed as a whole, taking into account all of its references to greenhouses and agriculture, a commercial greenhouse such as is proposed by Boyer constitutes an agricultural use permitted under section 400(B). An argument might be made that the language of section 2005(A), noted above, precludes a greenhouse from constituting a "principal" permitted use under section 400(B). Such an argument would be overly technical, however, since the accessory use doctrine is, in essence, only an acknowledgment that certain general types of real estate usage have a natural and reasonable tendency to lead to certain other more specific uses. The Supreme Court, in *Gross v. Zoning Board of Adjustment,* 424 Pa. 603, 227 A. 2d 824 (1967), confronted the argument that a restaurant could not be added as an accessory use to a bowling alley, because the bowling alley existed by virtue of a variance. The Court held, in effect, that this argument drew an artificial distinction between non-conformance cases and other situations where the natural expansion of a land use involved has been customarily termed an "accessory use." Taking into account, particularly, section 500 of the ordinance, we conclude that

the drafters of the ordinance have defined the term "agriculture" with sufficient breadth to include within its meaning the operation of commercial greenhouses. The language of section 2005(A), to the extent that it describes greenhouses as an accessory use, apparently evidences a legislative intention that commercial greenhouses may at times be accessory to some related principal agricultural use. Boyer's entire agricultural operation consists of greenhouses.

Having established this, Boyer's proposal cannot be deemed to violate the *use* restrictions of section 400 and, in this respect, he does not have a nonconforming use, but rather a permitted one. Other provisions of the ordinance present problems, however. The lower court concluded that the proposed buildings violated the area, side yard and minimum lot area requirements set forth in section 402 of the ordinance. This section provides *inter alia* that a lot area of not less than 90,000 square feet must be provided for every building erected (except for accessory uses not here relevant). Section 402 also requires that side yards be not less than 30 feet in width on any one side, and, in the aggregate, at least 70 feet in width. The Board made no specific findings of fact or conclusions of law regarding compliance with section 402.

The record is clear, however, on two pertinent facts: First, Boyer's lot covers 149,000 square feet (3.45 acres), enough to accommodate only one building under the ordinance. Second, there are already two structures on the lot, a residence, and the existing greenhouse. From the plans which were submitted as an exhibit at the hearing before the Board, it also appears (although we cannot be certain) that the proposed greenhouse is an extension or addition to the existing greenhouse, with actual physical connection along a 120 foot common wall. We can find no provision in the ordinance which relates the size of "buildings" to the 90,000 square feet per building requirement.

Taking into account the fact that the one building per 90,000 square feet requirement is already being violated as a matter of right under the decision in the prior litigation, we cannot see how, if the proposed construction calls for a structurally integrated addition to the existing greenhouse, the area requirement is further violated by the new greenhouse. There are presently two "buildings" on the lot, and, after the construction, there will still be two "buildings" on the lot, albeit one of them will be somewhat larger. We point out that this is not strictly speaking, an "expansion" of a nonconforming structure since the ordinance does not relate the area requirement of section 402 to any particular building size. If one has two small buildings on a tract, or two large ones, there are still only two buildings on the tract, and the *number* of buildings is all the ordinance addresses itself to in this regard.

The Board made no specific findings, and the record is otherwise unclear on whether Boyer's plan conforms to the side, front and rear yard requirements of section 402. As noted above, we are also uncertain as to the structural details of the proposed construction, particulary the storage facility. In light of these defects in the record, we must remand this case to the court below to consider whether, and to what extent, Boyer's plans violate any of the requirements of section 402 of the ordinance other than those that pertain to use.

Since other issues have been raised which may become relevant in any future litigation of this matter, we will deal with them for the benefit of the parties.

As an alternative basis for its decision, the Board found that Boyer had acquired a vested right to the permit he seeks. The Board concluded that "[t]he applicant has neither misrepresented nor concealed any relevant information in applying for a Building Permit and has expended a substantial sum of money in justifiable reli-

ance on the validity of the permit granted." Our careful review of the record supports this conclusion, but our review of the law relative to vested rights in building permits indicates that the Board failed to consider one critical requirement. In addition to a good faith application and justifiable reliance, one asserting a vested right in a building permit must also be in compliance with the zoning law existing at the time the permit is issued. As this Court recently said in *Pittsburgh v. Oakhouse Associates*, 8 Pa. Commonwealth Ct. 349, 359, 301 A. 2d 387, 392 (1973), quoting a prior decision of the Superior Court:

> "[a] municipal permit *issued illegally or in violation of the law, or under a mistake of fact*, confers no vested right or privilege on the person to whom the permit is issued and may be revoked notwithstanding that he may have acted upon the permit; any expenditures made in reliance upon such permit are made at his peril." (Emphasis in orginal.)

*See also Gallagher v. Building Inspector, City of Erie*, 432 Pa. 301, 247 A.2d 572 (1968) ; *Flood v. Zoning Hearing Board of Hampden Township*, 19 Pa. Commonwealth Ct. 427, 338 A.2d 789 (1975); *Vogt v. Port Vue Borough*, 170 Pa. Superior Ct. 526, 85 A. 2d 688 (1952) ; and Note, 73 *Dickinson L. Rev.* 578 (1969).

Having decided that Boyer's proposal is a permitted use under the ordinance, his contention that a vested right exists turns on the resolution of the question to be decided on the remand in this case. If, upon remand, it is found that Boyer's proposed construction fully complies with the balance of the requirements of the ordiance, he will, of course, have a vested right in his permit, since it will have been issued validly. It is equally clear that if Boyer prevails on the remand, he will not need a vested right to protect his project, because it will in all respects conform to the ordinance requirements. Conversely, if Boyer's plan is found to violate the ordinance,

he will not have a viable claim of vested right, despite his reliance, since the permit will not have been *validly* issued.

Boyer also argues that section 915 of the Pennsylvania Municipalities Planning Code (MPC), Act of July 31, 1968, P.L. 805, *as amended,* 53 P.S. §10915, precludes the revocation of a permit after 30 days from the date of issuance, regardless of whether it was erroneously issued. Section 915 reads, in relevant part:

> "No person shall be allowed to file any proceeding with the board later than thirty days after any application for development, preliminary or final, has been approved by an appropriate municipal officer, agency or body if such proceeding is designed to secure reversal or to limit the approval in any manner unless such person alleges and proves that he had no notice, knowledge, or reason to believe that such approval had been given."

Boyer relies upon *Brenz v. Lower Providence Township,* 94 Montg. Co. L. Rep. 316 (1971) as authority for the proposition that sections 909, 914 and 915 of the MPC, 53 P.S. §§10909, 10914 and 10915, require the Township to appeal to the Board within 30 days if the zoning officer incorrectly issues a building permit. *Brenz* does so hold, but that case represents an erroneous interpretation of the relevant MPC provisions. A zoning officer is an administrative official whose authority flows from provisions of the relevant ordinance. It would be incongruous to require the Township to appeal to a quasi-judicial body to secure the revocation of a permit erroneously issued by its own administrative employe. The ultimate issuing authority is the Township governing body,[5] not

---

5. We note that the actual permit in question in this case was signed in the following manner by the zoning officer:
"PERMIT GRANTED
/s/ Robert Williams
For the Supervisors of Marlborough Township"

the individual to whom this particular police function has been delegated. The record contains no reference to any official action, other than the *zoning officer's* act of revocation. Boyer, feeling aggrieved by this act, appealed within the 30-day limitation of section 915 of the MPC. Absent a vested right, we cannot see how Boyer can propose that the zoning officer lacks the power to revoke a permit which he had previously issued. Section 915 of the MPC has no applicability to the instant case, since (1) the zoning officer himself revoked the permit and (2) the Township governing body was under no obligation to seek redress from the Board for the erroneously issued permit.

In light of the above opinion, we

## ORDER

AND NOW, this 20th day of June, 1975, it is hereby ordered that the order of the Court of Common Pleas of Montgomery County, dated July 8, 1974, in the above-captioned matter is vacated, and this matter is remanded to that court for the formulation of specific findings of fact and conclusions of law relative to the question of whether the construction proposed by Russell H. Boyer is in conformity with the requirements of section 402 of the Marlborough Township Zoning Ordinance of 1970; and, it is further ordered that the Court of Common Pleas of Montgomery County order the issuance of a building permit for said construction if it determines that said requirements of the ordinance are satisfied, additional evidence to be taken in the discretion of the court and all of the above to be consistent with the opinion filed herewith.