## Borough of Middletown, Appellant *v.* Agway Petroleum Company, Appellee.

Argued February 9, 1979, before Judges CRUMLISH, JR., WILKINSON, JR. and MENCER, sitting as a panel of three.

*Michael H. Schaeffer*, for appellant.

*Robert L. Knupp*, with him *Knupp and Andrews*, for appellee.

OPINION BY JUDGE WILKINSON, JR., March 29, 1979:

In this appeal appellant, Borough of Middletown (Borough), challenges an order in mandamus of the Court of Common Pleas of Dauphin County[1] directing the Borough to reissue a building permit to appellee, Agway Petroleum Company (Agway), and awarding damages for the Borough's erroneous revocation of a building permit. We affirm.

The facts underlying this appeal are not disputed. Following discussions with officials of the Borough and the Lower Dauphin Code Enforcement Agency[2] a building permit was issued to Agway for construction of a self-service gasoline station for the exclu-

_____

[1] *Agway Petroleum Co. v. Borough of Middletown*, 99 Dauph. 357 (1977).

[2] The Boroughs of Middletown, Steelton and Highspire delegated to the "Agency" their respective authority for the enforcement of building Codes. Thus Agway secured approval from the "Agency" respecting the contemplated projects' compliance with building code requirements and from the Middletown Borough Manager respecting compliance with Borough zoning ordinances.

sive use[3] of the residents of Pineford Village a planned residential development (PRB) located in the Borough. Construction on the project was started on June 1, 1976 and by June 16, 1976 was two-thirds completed at a cost of about $20,000. On this latter date, pursuant to action taken at Borough Council's regular meeting on June 15, 1976, Agway was ordered to stop construction. By letter dated June 24, 1976, Borough Council revoked the building permit on the ground it had been issued in contravention of Borough zoning ordinances and was therefore illegal. The present litigation ensued.

The court below was persuaded that Agway had acquired a vested right in the building permit issued on April 29, 1976 making the Borough's subsequent revocation improper. Although the courts of this Commonwealth have had a number of opportunities to consider it in the past, "the concept of a claim of 'vested right', lacks a precise niche in zoning terminology."[4]

As announced by this Court, the general rule is that "one claiming a vested right in a building permit must establish that the application was made in good faith, that a substantial commitment or expenditure was made in justifiable reliance upon the granting of the permit, and that the permit was issued lawfully under zoning law then existing." *Cooper v. City of Greensburg,* 26 Pa. Commonwealth Ct. 245, 251, 363 A.2d 813, 815 (1976).

The only material point of disagreement between the parties concerns the validity of the permit at the time of issuance. To support its contention that the

---

[3] The building permit is to install a self-serve gasoline station with three "keytrol" pumps. The keys are given to residents of Pineford Village Apartments.

[4] R. Ryan, *Pennsylvania Zoning Law and Practice,* §8.1.1.

permit was improperly issued the Borough points to certain language in the PRD ordinance enacted by the Borough in 1969 to facilitate the establishment of Pineford Village. Under a heading entitled ''Development Commercial Center'' the following language appears: ''No commercial enterprises shall be permitted to operate except in the area designated for commercial uses.'' The Borough takes the position that no permit could have been validly issued since the plans given final approval for the development of Pineford Village[5] did not designate the precise piece of land for which Agway obtained its permit as a commercial area.

We are in agreement with the court below that a fairer reading of the PRD ordinance, giving consideration to its stated purpose and intent, reveals that the permit issued to Agway was entirely valid. The ordinance reads in pertinent part:

> The purpose and intent of the Development Commercial Center is to provide and require a *unified* and organized arrangement of buildings, service and parking areas together with adequate circulation and open space all planned and designed, as an *integrated unit*, in a manner so as to provide and constitute an efficient, safe, convenient and attractive *shopping area* to serve the Planned Development. . . . (Emphasis added.)

It is apparent that the Framers of the PRD ordinance sought to promote, in a controlled and unified manner, one or more commercial areas rather than haphazard placement of commercial establishments throughout a planned development.

---

[5] We have considered the discussion of both parties concerning the alleged failure to have the plan for Pineford Village recorded as required under the applicable zoning law, but we do not consider it to be a material point.

Prior to its designation as a PRD, the land comprising Pineford Village was a residential sector of Olmsted Air Force Base. In the course of the transition following the 1964 closing of the base the Borough sought bids for its development. As a part of the Borough's specifications, bidders were requested to preserve the two closely situated buildings used during the period of federal ownership as a commissary and rental/administration offices; continued utilization for the same or a similar purpose was also required. Thus by its own terms the Borough's specifications for the development of Pineford Village designated those two buildings as commercial structures. As we have already noted, the PRD ordinance contemplated an area for commercial uses and since no other area in the entire development was so designated the lower court's conclusion that Agway's project was part of an area designated for commercial uses is, we think, appropriate in light of the facts of this case.[6] Since we find no difficulties with the other requirements discussed in *Cooper, supra,* Agway's claim of a vested right must be sustained.

Accordingly, we will enter the following

### ORDER

AND Now, March 29, 1979, the order of the Court of Common Pleas of Dauphin County at No. 3539 Equity Docket, dated October 20, 1977, granting Agway

---

[6] In appellant's statement of the facts, this location is described as:

The area of the site is a large apartment complex housing some 742 residents (TR. p. 39, R. 54a) and contains a central recreation area and supporting rental and convenience store operations. The proposed location of the gasoline station is the area shown on the Planned Residential Development Plan (P.X. No. 9, R. 94a) as open space on the east side of Pineford Drive between the pool area and Pineford Drive approximately one hundred eighteen (118) feet

Petroleum Company's request in mandamus is hereby affirmed.

south of the rear of the Pensupreme Grocerette (TR. pgs. 16 and 17, 25 and 26, R. 29a-30a-40a, P.X. 9, R. 94a).

DISSENTING OPINION BY JUDGE MENCER:

I respectfully dissent. I am persuaded by the following reasoning of Judge DOWLING as set forth in his dissenting opinion in the court below.

A valid building permit is a prerequisite to the vesting of rights in the person to whom the permit has been issued. Here, a valid permit had not been issued. The plain language of the Borough's Planned Residential Development Ordinance prohibits the proposed structure. Its pertinent provision states: "No commercial enterprise shall be permitted to operate except in the area designated for commercial uses." The area in question is indisputably not so designated.

The plaintiff in the instant case could have determined that the issuance of the permit was unlawful by simply checking local ordinances. I believe we should adhere to the principle that invalidly issued building permits are void ab initio and their issuance confers no vested rights even where substantial sums are expended in justifiable reliance upon a permit obtained in good faith.

We have held previously that a permit issued illegally or in violation of law or under a mistake of fact confers no vested right or privilege upon the person to whom it is issued, even though the person may have made expenditures in reliance upon said permit. *Appeal of Donofrio*, 31 Pa. Commonwealth Ct. 579, 377 A.2d 1017 (1977); *Zoning Hearing Board v. Petrosky*, 26 Pa. Commonwealth Ct. 614, 365 A.2d 184 (1976); *Klavon v. Zoning Hearing Board*, 20 Pa. Commonwealth Ct. 22, 340 A.2d 631 (1975); *Flood v. Zon-*

442

*ing Hearing Board,* 19 Pa. Commonwealth Ct. 427, 338 A.2d 789 (1975); *Pittsburgh v. Oakhouse Associates,* 8 Pa. Commonwealth Ct. 349, 301 A.2d 387 (1973). *See Vogt v. Port Vue Borough,* 170 Pa. Superior Ct. 526, 85 A.2d 688 (1952).

I would apply the holding of these cited cases to the instant case and reverse the order of the Court of Common Pleas of Dauphin County which directs the Borough of Middletown to reissue a building permit to Agway Petroleum Company and awards damages to Agway Petroleum Company.