**TOWN OF ALTA, Plaintiff and Appellee,**

v.

**BEN HAME CORPORATION, Defendant and Appellant.**

No. 910129–CA.

Court of Appeals of Utah.

June 26, 1992.

James W. McConkie (argued), Parker, McKeown & McConkie, Murray, for defendant and appellant.

E. Barney Gesas (argued), William H. Christensen, Matthew C. Barneck, Campbell, Maack & Sessions, Salt Lake City, for plaintiff and appellee.

Before BENCH, GREENWOOD and JACKSON, JJ.

## OPINION

JACKSON, Judge:

Ben Hame Corporation (BHC) appeals the grant of an injunction prohibiting it from conducting commercial lodging operations in its single-family residence in violation of the Alta Town (Alta) zoning ordinance. We affirm.

BHC claims that its rental activity was a valid accessory use of its residence, and if not, that equitable estoppel should bar Alta from enforcing the zoning ordinance. Additionally, BHC asserts that Alta's ordinance is unconstitutional because the subdivision in which the Ben Hame residence is located is an "arbitrary" spot zone.

Alta occupies about four square miles, including both sides of Little Cottonwood Canyon at its upper reaches. Prior to 1982, the Blackjack Village Subdivision was developed under county zoning ordinances

on land adjacent to Alta. Blackjack occupies land located on the south slope of the canyon and consists of nine lots of at least one-half acre each. The north side of the subdivision, consisting of three lots, fronts on the Bypass Road. Lot Five is one of the three lots that front on the Bypass Road. The Bypass Road and the main road, U–210, provide vehicular access to and from Alta. U–210 is often closed because of snow avalanches; hence the Bypass Road is a critical traffic artery for Alta. BHC, an Illinois corporation, purchased Lot Five in Blackjack while the subdivision was in Salt Lake County zone FR–0.5. The only permitted uses in that zone were (1) agriculture, (2) single-family dwellings, and (3) accessory uses and structures customarily incidental to a permitted use. Salt Lake County, Utah, Ordinances § 22–9A–2 (1975). Single-family dwellings, however, did not include *hotels*, apartment hotels, *boarding houses*, *lodging houses*, mobile homes, tourist courts or apartment courts. Salt Lake County, Utah, Ordinances § 22–1–6(21) (1966).[1]

BHC's residence was designed and constructed as a 5,000 square foot single-family residence pursuant to county zoning and building codes and was first occupied in 1981. The home was built against the south slope of the canyon on three levels. As the structure rises, each level is set back from the front to accommodate the slope of the mountain. BHC's tax and corporate filings stated its business in Utah was "operation of hotels and inns." BHC printed and distributed brochures and rate schedules advertising the residence for rental. BHC stated that its home "can accommodate 12 to 20 people." Its annual rental rate schedules quoted rates for every month of the year with a base rate plus a surcharge for "each additional person." BHC also advertised and provided an on-site chef and airport shuttle service. BHC's 1988–89 rate schedule stated that rates included "services of resident manager and cooking 5/6 days out of 7 days (breakfast and dinner) and housekeeping services daily." The standard booking was stated as "7 days—Saturday to Saturday." A service charge applied "if shorter bookings are accepted." From 1980 to 1988, the number of rental occupants ranged from eight to fifteen. In 1988, BHC received about $54,000 in rental income from short-term rentals of its residence.

All nine lots of the Blackjack Village subdivision were annexed into Alta on August 11, 1982 and consequently into Alta zone FR–0.5.[2] Alta's ordinance stated that

1. A "boarding house" is defined as "[a] building with not more than five (5) guest rooms, where, for compensation, meals are provided for at least five (5) but not more than fifteen (15) persons." Salt Lake County, Utah, Ordinances § 22–1–6(9) (1966).

   A "lodging house" is defined as "[a] building where lodging only is provided for compensation of five (5) or more, but not exceeding fifteen (15) persons." Salt Lake County, Utah, Ordinances § 22–1–6(41) (1966).

   A "hotel" is defined as "[a] building designed for *or occupied by* sixteen (16) or more guests who are for compensation lodged, with or without meals and in which no provision is made for cooking in any individual room or suite." Salt Lake County, Utah, Ordinances § 22–1–6(37) (1975) (emphasis added).

2. The record does not indicate whether Alta completed the annexation and zoning by single or separate legislative acts. Nor does the record show whether districts other than the Blackjack Village subdivision were involved in the legislative action. Further, it is not apparent whether BHC challenged either the initial annexation or the zoning ordinances during Alta's legislative enactment process.

   The record contains a letter from Alta's attorney to BHC's attorney dated September 30, 1988. The letter states: "[W]e are, of course, aware of the attempts you have made to obtain a zone change for the Blackjack Village Subdivision from FR–0.5 to the Peruvian Estates zone. Presently, the zoning remains FR–0.5, and unless and until the Town Council rezones the Ben Hame property, the house may not be used for non-single family purposes."

   We are left to conjecture regarding what "attempts" BHC made to rezone. BHC's reply brief states, without any support in the record, that "Ben Hame petitioned the town of Alta on two separate occasions to re-zone the Blackjack Village subdivision," and that both petitions were rejected. Further, BHC has attached to its reply brief copies of two "petitions" to rezone which do not appear in the record. The first is signature-dated January 9, 1990. The second does not contain any date or signature. Neither shows a filing date.

   The record does not reveal whether BHC appealed or sought review of any of Alta's legislative decisions on annexation, zoning or rezon-

the permitted uses in this zone were the same three uses permitted by the county's ordinance mentioned above. Alta, Utah, Ordinances § 22–9–2 (1972). However, while the county ordinance did not state that commercial rentals were either permitted or prohibited in the FR–0.5 zone, Alta's ordinance contained a specific prohibition:

> *Commercial Rental Prohibited.* It shall be deemed to be a prohibited commercial use in all FR [Forestry and Recreation] zones to lease or rent any dwelling or other structure, or portion thereof, for lodging purposes, for a period of thirty (30) days or less.

Alta, Utah, Ordinances § 22–9–3A (1979).

BHC applied three times to Alta's town clerk for a business license to operate a "lodging facility." The clerk issued licenses for six months beginning November 1, 1983, and November 1, 1984, and for twelve months on November 1, 1986. The record does not indicate that BHC received any licenses after these. In December of 1988, Alta filed this action for injunctive relief to prohibit BHC's ongoing short-term rentals of its home as a commercial lodging facility in violation of Alta's zoning ordinance. The trial court granted Alta a preliminary injunction on April 9, 1990 and, on cross motions for summary judgment, granted Alta's summary judgment on August 15, 1990, resulting in a permanent injunction. On appeal, we examine BHC's defensive claims in turn.

## ACCESSORY USE TO SINGLE–FAMILY RESIDENCE

■ BHC claims that its rental operation was a valid accessory use in Salt Lake County zone FR–0.5. Further, BHC claims that since such use was valid in the county zone, the use became a valid nonconforming use in Alta's FR–0.5 zone. Accordingly, we first examine the accessory use assertion.

The county zoning ordinance defines accessory use as "[a] subordinate use customarily incidental to and located upon the same lot occupied by a main use." Salt Lake County, Utah, Ordinances § 22–1–6(68) (1966). The quoted language requires that a valid accessory use be customarily incidental to a main use. Thus, the question is whether intensive short-term commercial rental is a subordinate use customarily incidental to the main use as a single-family dwelling.

■ Here, the trial court concluded that "accessory use" as defined by the Salt Lake County ordinances applicable at the time BHC's house was constructed "does not include over-night rental use of a single family house." We accord conclusions of law no particular deference but review them for correctness. *Scharf v. BMG Corp.*, 700 P.2d 1068, 1070 (Utah 1985). The trial court's interpretation of a statute presents a question of law reviewed for correctness without deference. *Ward v. Richfield City*, 798 P.2d 757, 759 (Utah 1990); *Berube v. Fashion Centre, Ltd.*, 771 P.2d 1033, 1038 (Utah 1989). We apply the same standard to the trial court's interpretation of an ordinance.

■ BHC has noted that "there has been no official interpretation by Salt Lake County which would bind or influence the court's interpretation of the county ordinances." Just as the interpretation of a statute or zoning ordinance is a question of law for the court, *Burley Lagoon Improvement Ass'n v. Pierce County*, 38 Wash. App. 534, 686 P.2d 503, 505 (1984), the determination of what uses are accessory uses customarily incidental to a single-family dwelling is a question of law. *See Thomas v. Zoning Hearing Bd.*, 121 Pa. Cmwlth. 393, 550 A.2d 1045, 1046 n. 3 (1988) ("whether a use constitutes an accessory use under a particular ordinance is a question of law, but one which can be answered only by the consideration of the underlying factual situation"); *City of Boise City v. Gabica*, 106 Idaho 94, 675 P.2d 354, 356 (Ct.App.1984) (deeming it clear as a matter of law that business was not "incidental" to residential use of single-family dwelling); *Potts v. City of Hugo*, 416 N.W.2d 465, 468 (Minn.Ct.App.1987) (holding as a matter of law that parking a

ing. Alta filed this action on December 16, 1988.

semi-truck and trailer is not customarily incidental to a residential use).

BHC contends that county officials interpreted the words "accessory use" to include and allow short-term rentals of single-family dwellings. BHC relies on the affidavit of the county's Director of Development Services, Ken Jones. Mr. Jones stated that he was responsible for enforcing county zoning ordinances when the BHC home was first rented. He stated that the county considered the short-term rental of recreation homes in the canyons to be an accessory use. BHC further refers to the fact that the county never took any enforcement action to prohibit such rentals and refused to adopt a proposal expressly prohibiting short-term rental of canyon homes.

BHC also relies upon the affidavit of the Wasatch Front Ski Association, which arranges short-term rentals of county dwellings for skiers. The affidavit states that, although the association had advised the county of its activities, at no time had the county taken any action to prohibit such rentals or advised the association that such rentals were prohibited by the ordinance. Thus, BHC concludes that "[t]he declared custom, practice, and intent of Salt Lake County is to allow such short-term seasonal rentals." Although we defer to the county commission's legislatively delegated discretion in making legal decisions, *Sandy City v. Salt Lake County*, 827 P.2d 212, 218 (Utah 1992), county administrative officials may not forfeit the power of enforcement by disregarding an ordinance. *Salt Lake County v. Kartchner*, 552 P.2d 136, 138 (Utah 1976). The custom or practice of certain county officials not to enforce the prohibition of short-term rentals of single-family residences does not necessarily mirror the intent of the legislative body in enacting the zoning ordinance with the language now under scrutiny.

We divine the meaning of the county zoning ordinance regarding accessory use from the general purpose of the ordinance. "In interpreting and applying the provisions of this Ordinance, the require-ments contained herein are declared to be the minimum requirements for the purposes set forth." Salt Lake County, Utah, Ordinances § 22–1–3 (1966). By specifying that the permitted uses were agriculture, single-family dwellings, and accessory uses customarily incidental to a main use, and that such uses as boarding houses, lodging houses, or hotels, were not permitted, the ordinance was intended to prohibit uses inconsistent with the agricultural or residential character of the area. "Among the objectives to be served [by zoning] is to avoid mixing together of industrial, commercial, business, and residential uses." *Naylor v. Salt Lake City Corp.*, 17 Utah 2d 300, 410 P.2d 764, 765 (1966). The ordinance should thus be construed to maintain the character of a single-family neighborhood. Further, the words "customarily incidental" to a main use, as used to define an accessory use, imply that the use flows from, naturally derives or follows as a logical consequence of, or is a normal and expected offshoot from the main use. *See Township of Groveland v. Jennings*, 106 Mich.App. 504, 308 N.W.2d 259, 262–63 (1981), *aff'd*, 419 Mich. 719, 358 N.W.2d 888 (1984); *see also Klavon v. Zoning Hearing Bd.*, 20 Pa.Cmwlth. 22, 340 A.2d 631, 634 (1975) ("accessory use doctrine" acknowledges that certain general types of real estate use have a natural and reasonable tendency to lead to certain other more specific uses). A valid accessory use to a single-family dwelling is one which actually furthers or enhances the use of the property as a residence and not one which merely helps finance the property. *Lerner v. Bloomfield Township*, 106 Mich.App. 809, 308 N.W.2d 701, 703 (1981).

Courts have widely recognized that "residential" use may include many elements. " 'Use by a family of a home under our customs includes more than simple use of a house and grounds for food and shelter. It also includes its use for private religious, educational, cultural and recreational advantages of the family.' " *City of Boise*, 675 P.2d at 356 (quoting *Borough of Chatham v. Donaldson*, 69 N.J.Super. 277, 174 A.2d 213, 216 (1961)).

Family hobbies, recreation and education are without question accessory uses customarily incident to single family dwellings. The words "uses customarily incident to single family dwellings" mean the class of activity a family customarily does in or about their home.... As long as the activity is a form of family hobby, recreation or education it is permissible even though it may be unusual unless it is specifically excluded by a zoning restriction.

*Dettmar v. County Bd. of Zoning Appeals*, 28 Ohio Misc. 35, 273 N.E.2d 921, 922 (Ct. Common Pleas 1971).[3] On the other hand, courts have drawn a line on uses they consider residential. The Utah Supreme Court has upheld the granting of an injunction against the property owners' expanded use of a single-family residence as a restaurant under a similar zoning ordinance. *Utah County v. Baxter*, 635 P.2d 61, 64 (Utah 1981); *see also Provo City v. Claudin*, 91 Utah 60, 63 P.2d 570, 573 (1936) (allowance of public and semipublic buildings in residential district did not manifest intention to allow funeral home).[4]

We conclude that use as a "lodging facility"[5] of a building originally designed and constructed as a single-family dwelling is not an accessory use customarily incidental to the main use within the meaning of the Salt Lake County zoning ordinance. Thus, BHC's short-term rental operation conducted in its residence violated the zoning ordinance.

In view of the above determination, we need not reach BHC's claim that it acquired a valid nonconforming use under the county zoning ordinance which carried forward under Alta's zoning ordinance. A nonconforming use may not be established through a use which from its inception violated a zoning ordinance. Such use has no lawful right to continue. *Goodwin v. City of Kansas City*, 244 Kan. 28, 766 P.2d 177, 181 (1988). Instead, we turn to BHC's claim that Alta should be estopped in equity to enforce its zoning ordinance against BHC's Lot Five.

## EQUITABLE ESTOPPEL

BHC claims that its applications for and Alta's issuance of three business licenses to operate a lodging facility in its home for a total of twenty-four months, along with Alta's previous failure to enforce the zoning ordinance, estops Alta from now seeking to enforce its ordinance. Generally, to raise a successful equitable defense against the enforcement of a zoning law, a landowner must first show ex-

---

**3.** Some examples of activities typically found to be accessory uses to single-family dwellings include recreational uses such as tennis courts and swimming pools, *Hardy v. Calhoun*, 383 S.W.2d 652, 655 (Tex.Civ.App.1964); the keeping of pets, *Foster Village Community Ass'n v. Hess*, 4 Haw.App. 463, 667 P.2d 850, 855 (1983); and the practice of hobbies such as the use of an amateur radio antenna, *Dettmar*, 273 N.E.2d at 922.

**4.** Activities typically found not to be customarily incidental to a single-family dwelling include running a carpet cleaning business from the home, *City of Boise City v. Gabica*, 106 Idaho 94, 675 P.2d 354, 356 (Ct.App.1986); a homeowner's use of a helicopter to land at his home, *Redington Ranch Assocs. v. Redman*, 153 Ariz. 437, 737 P.2d 808, 809 (Ct.App.1987); rendering of psychotherapy and marriage counseling services from the home, *Lerner v. Bloomfield Township*, 308 Mich.App. 809, 308 N.W.2d 701, 702 (Ct. App.1981); and the use of a residential dwelling as a "boarding or rooming house," defined as a house where the business of keeping boarders is

carried on and which is held out by the owner as a place where boarders are kept, *Baddour v. City of Long Beach*, 279 N.Y. 167, 18 N.E.2d 18, 21–22 (1938), *appeal dismissed*, 308 U.S. 503, 60 S.Ct. 77, 84 L.Ed. 431 (1939); *see also Keseling v. City of Baltimore*, 220 Md. 263, 151 A.2d 726, 729 (1959) (use of home for seven roomers, four apartments, and a business office not incidental to residential use).

**5.** This is the term BHC used for its operation. We believe that the trial court's term, "commercial lodging facility," adequately describes the three mutually exclusive but comprehensive exceptions into which any chosen use of Ben Hame by a short-term occupant would fall. Regardless of whether occupants used the facility as a "boarding house," by taking advantage of the meal services provided by the owners, or as a "lodging house," by providing their own meals, or as a "hotel," by occupying the facility with sixteen or more guests for compensation, the pervasive short-term commercial use of the facility fell within one of these three enumerated exceptions.

ceptional circumstances warranting such a defense.

> Estoppel, waiver or laches ordinarily do not constitute a defense to a suit for injunctive relief against alleged violations of the zoning laws, unless the circumstances are exceptional. Zoning ordinances are governmental acts which rest upon the police power, and as to violations thereof any inducements, reliances, negligence of enforcement, or like factors are merely aggravations of the violation rather than excuses or justifications therefor.

*Salt Lake County v. Kartchner*, 552 P.2d 136, 138 (Utah 1976) (quoting 8A McQuillin Mun. Corps. § 25.349 (Rev.1965)).

■ In *Utah County v. Young*, 615 P.2d 1265 (Utah 1980), the supreme court outlined the prerequisites for invoking the doctrine of equitable estoppel in a zoning case. To invoke the doctrine, Alta must have committed an act or omission upon which BHC could rely in good faith in making substantial changes in position or in incurring extensive expenses. If BHC's reliance is based on Alta's action, the action must be clear, definite and affirmative. If BHC's reliance is based on Alta's omission, the omission must be negligent or culpable and Alta, failing to act, must have been under a duty to do so. *See id.* at 1267–68. Mere "silence or inaction will not operate to work an estoppel." *Id.; see also Utah County v. Baxter*, 635 P.2d 61, 65 (Utah 1981) (requiring exceptional circumstances); *Xanthos v. Board of Adjustment*, 685 P.2d 1032, 1038 (Utah 1984) (holding estoppel did not apply when city had not misled builder to his detriment); *Eldredge v. Utah State Retirement Bd.*, 795 P.2d 671, 675 (Utah App.1990) (holding equitable estoppel may be asserted against state or its agencies only when the injustice to be avoided is of sufficient gravity to invoke the exception). BHC used its home as a lodging facility at the time of annexation in 1982 and continued this use long before the clerk issued the first "lodging facility" business license. Thus, BHC has failed to show that it substantially changed its position to its detriment. Further, any action or omission by Alta was not of a nature to justify good

faith reliance. We think the rationale in *Morrison v. Horne*, 12 Utah 2d 131, 363 P.2d 1113, 1114 (1961) regarding estoppel applies:

> It would be unreasonable and unrealistic to conclude that a clerk or a ministerial officer having no authority to do so, could bind the county to a variation of a zoning ordinance duly passed, to which everyone has notice by its passage and publication, because a ministerial employee erred in characterizing the type of property.

In *Morrison*, the assessor's erroneous description of the property for a number of years as commercial did not preclude zoning authorities from denying a building permit for a service station. *Id.* Similarly, the Alta town clerk's issuance in this case of three lodging facility licenses does not estop Alta from denying use of BHC's residence as a lodging facility contrary to the Alta zoning ordinance. Additionally, failure to enforce zoning for a time does not forfeit the power to enforce. See *Kartchner*, 552 P.2d at 138. BHC has shown neither an act or omission by Alta justifying good faith reliance nor a substantial detrimental change in BHC's position in reliance on Alta's acts. Hence, BHC has not shown any exceptional circumstances constituting an estoppel defense to the injunction action.

### SUMMARY JUDGMENT VERSUS "SPOT ZONING"

■ Because summary judgment presents for review only questions of law, we review those issues for correctness, affording no deference to the trial court. *Transamerica Cash Reserve, Inc. v. Dixie Power and Water, Inc.*, 789 P.2d 24, 25 (Utah 1990). Alta moved for summary judgment granting its claim for injunctive relief under Rule 56 of the Utah Rules of Civil Procedure. Injunctive relief is generally available only when intervention of a court of equity is essential to protect against irreparable injury. However, under our zoning statutes, injunctive relief is available as an alternative to criminal prosecution. Utah Code Ann. § 10–9–30 (1989);

*see Utah County v. Baxter,* 635 P.2d 61, 64 (Utah 1981) (applying comparable statute for counties under Utah Code Ann. § 17–27–23 (1953)). To be granted an injunction, Alta need not make a specific showing of irreparable injury. "A showing that the ordinance has been violated is tantamount to a showing of irreparable injury (to the public)." *Baxter,* 635 P.2d at 65. Summary judgment is proper when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Utah R.Civ.P. 56; *Kitchen v. Cal Gas Co.,* 821 P.2d 458, 460 (Utah App.1991).

The court had before it the zoning ordinance in support of Alta's position and the affidavit of Marcus LaFrance, Alta's expert, a former member of the town planning commission, in charge of revising the town general plan. The affidavit states in essence that property surrounding the Blackjack subdivision is zoned for single-family dwellings (FM–20 and FR–50) unless owners obtain a conditional use permit for short-term rentals. The affidavit further states that the prohibition of short-term rentals is necessary in this area to facilitate snow removal and to avoid parking congestion when the Bypass Road is the only passable route. This affidavit was uncontested by BHC. Since BHC admitted that without a valid accessory or nonconforming use permit, its rental operation was in violation of the ordinance, Alta had presented a valid case for injunctive relief. Thus, Alta was entitled as a matter of law to a summary judgment granting the injunction unless BHC could present evidence, by affidavit or otherwise, of a legitimate defense, creating a genuine issue as to any material fact. "When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of his pleading, but his response, by affidavits, or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial." Utah R.Civ.P. 56(e).

BHC opposed Alta's motion with the claim that the zoning ordinance created an arbitrary spot zone of the Blackjack subdivision, because "the zone in which the defendant's home is located is small and ... the property is surrounded by residential property expressly zoned for short-term rental." In support of BHC's position, the court had before it the town zoning map and an expert's affidavit. The zoning map shows that the town occupies an area about two miles square divided into six types of districts. One large district covers most of the area exclusive of the canyon, interspersed with six small subdivision districts. The remaining ten districts are within the confines of the canyon south of the main road. The districts are of varying sizes. Near the Blackjack subdivision is another FR–0.5 district of similar size. Nothing on the face of the map would support a conclusion that the Blackjack subdivision was an arbitrary spot zone, or that the various districts are not deemed appropriate to carry out the purposes of the zoning ordinance. Accordingly, BHC relies solely on its expert's affidavit to support its contention that Blackjack subdivision is an arbitrary spot zone.[6]

On appeal, BHC argues that its affidavit creates a genuine issue of material fact regarding whether Alta's zoning of the Blackjack subdivision constitutes illegal arbitrary spot zoning. However, BHC's affiant's conclusory statements are not relevant and material to BHC's legal claim, and thus do not create a "genuine issue as to any material fact." Utah R.Civ.P. 56(c). The affidavit states, with our emphasis,

---

6. "Spot zoning results in the creation of two types of 'islands.' One type results when the zoning authority improperly limits the use which may be made of a small parcel located in the center of an unrestricted area. The second type of 'island' results when most of a large district is devoted to a limited or restricted use, but additional uses are permitted in one or more spots in the district." *Crestview–Holladay Homeowners Ass'n, Inc. v. Engh Floral Co.,* 545 P.2d 1150, 1151 (Utah 1976). We point out that, if allowed, BHC's use of its lot for commercial lodging in the Blackjack residential district could create a spot zone of the second type.

that "based upon affiant's education, skill, expertise, training and practical experience, affiant holds the following opinions regarding the short-term rental of *Ben Hame [premises]* in the Blackjack Village subdivision." The expert then states his opinion that short-term rental of the *Ben Hame premises* does not: increase street congestion, increase parking problems, increase danger associated with fire, increase risk to dangers of avalanches or other dangers, contribute to overcrowding and undue concentration of populations, burden adequate provision for water, diminish adequate provision for sewage, impact snow removal, impact adequate provision for schools, parks and other public requirements, offend the character of the district and its peculiar suitability for particular uses, decrease the value of buildings in the subdivision; that it in fact increases the value. Finally, the affidavit states that the short-term rental of the home is appropriate land use, that the prohibition against short-term rental is not warranted and based upon the foregoing and other considerations that "[t]he prohibition against short-term rental on the *Ben Hame premises* is unreasonable, irrational, arbitrary, abuse of discretion and has no relation whatever to the public health, safety and welfare." Each of the statements contains the limiting phrase "that the short-term rental of the *Ben Hame premises* does not...." How-

ever, BHC's allegation both in its answer and in its memorandum in opposition to the summary judgment is that the zoning of the entire Blackjack subdivision is illegal spot zoning. Accordingly, the statements relating only to the "Ben Hame premises" and not to the "Blackjack subdivision" do not even speak to BHC's legal claim. The zoning map and Alta's expert affidavit presented evidence that areas adjacent to the Blackjack subdivision were treated similarly; the expert affidavit also presented evidence that the zoning was related to public health, safety, and welfare. In response, BHC rested only on its allegations and an inadequate affidavit.[7]

In reviewing a summary judgment grant, we view the facts in a light most favorable to the party against whom the motion was granted, *Sandy City v. Salt Lake County,* 827 P.2d 212, 214 (Utah 1992), and responsive affidavits may not always be necessary when material facts are genuinely at issue, *see Mountain States Tel. & Tel. Co. v. Atkin, Wright & Miles, Chartered,* 681 P.2d 1258, 1261 (Utah 1984). However, summary judgment is proper when no genuine issue of material fact exists and the moving party is entitled to judgment as a matter of law. *Transamerica,* 789 P.2d at 25. Because BHC has failed to present any material facts creating a genuine issue for us to view, we must sustain the summary judgment.[8] We

7. The dissent raises a new argument on behalf of appellant, advocating that "the zoning authority has the burden of identifying the purpose for the zoning decision when spot zoning is raised as a defense," citing cases in which municipalities made no showing of any benefits justifying zoning schemes. We think the burden of proof is irrelevant in this case because BHC has pleaded only conclusory legal allegations and has not presented any facts whatsoever upon which a "material issue" could be based. Further, because constitutionality is presumed in the municipality's exercise of its legislative powers, the burden of showing "failure to comply with the constitutional standard of reasonableness" is on the challenger once the municipality has disclosed the basis of its decisions. *Banberry Dev. Corp. v. South Jordan City,* 631 P.2d 899, 904 (Utah 1981); *see also Lum Yip Kee, Ltd. v. City & County of Honolulu,* 70 Haw. 179, 767 P.2d 815, 822 (1989) (the burden of demonstrating that a zoning ordinance creates illegal "spot zoning" rests upon the party asserting its illegal-

ity). Neither the zoning map nor the affidavit interpreting it showed a pattern of spot zoning or revealed a lack of rationale for the zoning plan. Thus, BHC's mere unsupported legal allegations do not suffice to create a material issue of fact precluding summary judgment.

8. Utah Supreme Court zoning cases considering equitable actions for injunctive relief include: *Scherbel v. Salt Lake City Corp.,* 758 P.2d 897 (Utah 1988) (request for extraordinary relief denied); *Utah County v. Baxter,* 635 P.2d 61 (Utah 1981) (injunction granted against property owner's commercial use (restaurant) of single-family residence) *Marshall v. Salt Lake City,* 105 Utah 111, 141 P.2d 704 (1943) (grant of injunction against issuance of building permits, reversed); *Provo City v. Claudin,* 91 Utah 60, 63 P.2d 570 (1936) (injunction granted against operating a funeral home in residential district).

Utah Supreme Court zoning cases considering legal actions for declaratory judgment relief include: *Naylor v. Salt Lake City Corp.,* 16 Utah 2d

affirm a trial court's grant of a motion for summary judgment on any reasonable legal basis even if not relied on below. *Hill v. Seattle First Nat'l Bank*, 827 P.2d 241, 246 (Utah 1992). Judgment affirmed.

GREENWOOD, J., concur.

BENCH, Presiding Judge (concurring in part and dissenting in part):

I concur in the majority's conclusion that Alta was not estopped from seeking to enforce its zoning regulations. I respectfully dissent, however, from the majority's holding that the rental of the Ben Hame home did not constitute a valid nonconforming use under the express terms of Salt Lake County's (the County) zoning code. I also respectfully disagree with the majority's conclusion that Ben Hame did not adequately present its spot zoning defense and would hold that Alta was not entitled to summary judgment as a matter of law.

The Ben Hame Corporation is owned by two nonresident families who use the home for their personal use as a vacation home. The home has a kitchen, a living room, a dining room, a game room, a family room, a laundry room, a caretaker's room, four bedrooms, and a garage. When the families are not personally using the home, they rent it out. The entire Blackjack subdivision, where the home is located, is only 450 feet by 500 feet and is zoned as a separate land-use area.

## STANDARD OF REVIEW

The majority fails to state the proper standard of review when interpreting zoning ordinances. Zoning laws "must be given strict construction and the provisions thereof may not be extended by implication." *Maui v. Puamana Management Corp.*, 2 Haw.App. 352, 631 P.2d 1215, 1218

192, 398 P.2d 27 (1965) (issues of fact precluded summary judgment, reversed for trial); *Dowse v. Salt Lake City Corp.*, 123 Utah 107, 255 P.2d 723 (Utah 1953) (factual allegations of complaint insufficient, dismissal affirmed); *Phi Kappa Iota Fraternity v. Salt Lake City*, 116 Utah 536, 212 P.2d 177 (Utah 1949) (ordinance not a discrimination against rightful use of premises).

(1981). "[Z]oning ordinances ... are in derogation of the common-law right to use property so as to realize its highest utility and should not be extended by implication to cases not clearly within the scope of the purpose and intent *manifest in their language.*" *Wiggers v. County of Skagit*, 23 Wash.App. 207, 596 P.2d 1345, 1348 (1979) (emphasis added) (quoting *State ex. rel. Standard Min. and Dev. Corp. v. Auburn*, 82 Wash.2d 321, 326, 510 P.2d 647, 651 (1973)). We may not extend the County's zoning ordinances beyond their express technical terms. "[W]hen the construction of a sentence involves technical words and phrases which are defined by statute, the provision must be construed according to such peculiar and appropriate meaning or definition." *Cannon v. McDonald*, 615 P.2d 1268, 1270 (Utah 1980).

The majority asserts that the meaning of the zoning ordinance should be "divined" from the general purpose of the ordinances. We do not, however, "divine" the intent of the ordinance by resorting to its general purpose unless there is some ambiguity in the ordinance itself. "Where statutory language is plain and unambiguous, this Court will not look beyond to divine legislative intent. Instead, we are guided by the rule that a statute should be construed according to its plain language." *Allisen v. American Legion Post No. 134*, 763 P.2d 806, 809 (Utah 1988).[1]

The majority also disregards the longstanding rule that we presume local zoning authorities have special knowledge concerning zoning matters in their community. Consequently, we give broad deference to their legislative decisions to adopt, *or not to adopt*, particular zoning regulations. *See Naylor v. Salt Lake City Corp.*, 17 Utah 2d 300, 302, 410 P.2d 764, 765–66 (1966); *accord Marshall v. Salt Lake City*, 105 Utah 111, 121, 141 P.2d 704, 710 (1943) (the determination of which land uses are

1. Alta has not identified any ambiguity in the County's zoning ordinances that requires us to look to their general purpose. Instead, Alta erroneously asserts that the County's silence regarding short-term rentals permits a judicial prohibition.

permitted in a zone "lie[s] in the discretion of the governing body of the city"). We may not "second-guess the county's lawful exercise of its legislatively delegated discretion." *Sandy City v. Salt Lake County*, 827 P.2d 212, 218 (Utah 1992).

When interpreting regulations such as a zoning ordinance, "a reasonable administrative interpretation and practice should be given some weight." *Salt Lake City v. Salt Lake County*, 568 P.2d 738, 741–42 (Utah 1977). Given the technical expertise of the County's zoning and planning department, it is in a much better position than we are to achieve the desired goal of proper zoning as determined by the county commission. We therefore must defer to its administrative interpretation of its own zoning ordinances. *See Sandy City*, 827 P.2d at 218; *accord Cottonwood Heights Citizens Ass'n v. Board of Comm'rs*, 593 P.2d 138, 140 (Utah 1979); *cf. Morton Int'l, Inc. v. State Tax Comm'n*, 814 P.2d 581, 586 (Utah 1991) ("[T]he dispositive factor [in determining whether to defer to an agency's interpretation of a statute] is whether the agency, by virtue of its experience or expertise, is in a better position than the courts to give effect to the regulatory objective to be achieved.").

Furthermore, the majority's activist approach exceeds the limited review mandated by the Utah Supreme Court in *Phi Kappa Iota Fraternity v. Salt Lake City*, 116 Utah 536, 212 P.2d 177 (1949):

> There are, of course, various solutions for zoning problems such as this; and opinions may differ as to which is the most efficacious. But it is not for the court to weigh the respective merits of these solutions. That is the duty which lies upon the shoulders of the governing body.... If changes have developed which indicate [the need for a different approach], that is a matter for submission to the commission; and not one for the courts.

*Id.*, 212 P.2d at 181. *See also Euclid v. Ambler Realty Co.*, 272 U.S. 365, 393, 47 S.Ct. 114, 120, 71 L.Ed. 303 (1926) ("We have nothing to do with the question of the wisdom or good policy of municipal ordinances.").

## NONCONFORMING USE

The majority inappropriately approaches this case as an accessory use case. No serious contention can be made that Ben Hame did not have a right, as an accessory use, to rent out the home as a "single-family dwelling." The renting of property for a permitted use is so common that we must acknowledge that it is a permitted accessory use as a matter of law. If it is not a permitted accessory use, we must conclude that the majority today outlaws all renting of property in the County because the renting of property, short-term or long-term, is not identified in the County's zoning code as a permitted use.[2]

The appropriately framed issue in this case is whether the weekly rental of a single-family dwelling, *as a single-family dwelling*, was a lawful use prior to annexation by Alta. In order to determine whether weekly rentals were "lawful" prior to annexation, we look to the express provisions of the County's zoning law. *See, e.g., Crestview–Holladay Homeowners Assoc. v. Salt Lake County*, 545 P.2d 1150, 1151 (Utah 1976); *accord Rock Manor Trust v. State Road Comm'n*, 550 P.2d 205 (Utah 1976).

There is no prohibition of weekly or short-term rentals found anywhere in the County's ordinances. If the County had intended to regulate the rental period of a

---

**2.** Even under an accessory use analysis, the majority errs in concluding as a matter of law that short-term rentals are not a customarily incidental use of single family dwellings located in the canyons of Salt Lake County. The majority erroneously focuses its analysis on what might be customary in a *typical* residential zone. This is not, however, a typical suburban residential zone. It is a forestry and recreation zone located in a canyon between two ski resorts, surrounded by condominiums and hotels. Affidavits were presented to the trial court indicating that short-term rentals are in fact quite common in the County's *forestry and recreation* zones. Given this uncontroverted evidence, the majority cannot rule by legal fiat that short-term rentals are not customarily incidental to the use of "single-family dwellings" located in *forestry and recreation* zones.

single-family dwelling, the ordinance "could have been drafted to more clearly reflect such an intent." *Steele v. Brienholt,* 747 P.2d 433, 435 (Utah App.1987). Because no such restriction was created in the ordinance, we are bound to conclude that the County did not intend to create such a restriction. *Id.*[3] Ben Hame even presented to the trial court evidence that, as a matter of actual practice, the County did not interpret its zoning ordinances to prohibit short-term rental. The majority dismisses this evidence by stating that the County may not "forfeit the power of enforcement by disregarding an ordinance." The majority, however, never identifies (nor can it identify) a single provision of the zoning ordinance that the County has not enforced. By rejecting the County's administrative interpretation and application, the majority unilaterally and drastically alters the zoning law in all of Salt Lake County. It imposes upon the County Alta's interpretation of the County's ordinances without giving any thought to what the County intended.

Even though the County has not prohibited weekly rentals, it has, pursuant to its legislative discretion, addressed the issue of "improper" rentals in residential districts. The County protects residential neighborhoods through its definition of "single-family dwellings." When the Ben Hame home was built, the County defined a "single-family dwelling" as

a building arranged or designed to be occupied by one or more persons living as a single housekeeping unit for living or sleeping purposes; and having one, but not more than one, kitchen; *provided* the building is not a hotel, apartment hotel, boarding house, lodging house, mobile home, tourist court, or apartment court.[4]

Under the County's zoning plan, if the Ben Hame home is designed for use by a single family, it is a "single-family dwelling," *unless* it is actually used for an impermissible use such as a "hotel," "boarding house," or "lodging house." Given this definition, Ben Hame needs only to show that the home was designed for use by a single family in order to prove it was a presumptively lawful use. This it did with an affidavit from the designing architect. The majority even concedes that the Ben Hame home was designed as a single-family dwelling. The home is therefore a lawful use under the County's zoning ordinances *unless* Alta proves it was actually being used as a "hotel," "boarding house," or "lodging house," as the County defines those terms.

The trial court, however, never found that the home was actually being used as a "hotel," "boarding house," or "lodging house" when it rendered summary judg-

**3.** It is unlikely a zoning authority could attempt to require a landlord to prove that tenants will remain in a home permanently or for a set period of time in order for the home to be considered a single family dwelling. *See Maui v. Puamana Management Corp.,* 2 Haw.App. 352, 631 P.2d 1215, 1218 (1981) (county's position that a renter must manifest an intent to make a condominium unit his permanent home in order for it to be considered a residential use was "on its face, absurd"). Ben Hame has not, however, made such a facial challenge to Alta's ordinance in this case.

**4.** The foregoing definition is a composite definition derived by combining the definitions of the technical words contained in the County's definition of a "single-family dwelling." A "single-family dwelling" is defined as "[a] building arranged or designed to be occupied by one (1) family, the structure having only one (1) dwelling unit." Salt Lake County Ordinances § 22–1–6(22).

A "dwelling unit" is defined as "[o]ne or more rooms in a dwelling, apartment hotel or apartment motel, designed for or occupied by one (1) family for living or sleeping purposes and having one (1) but not more than one (1) kitchen or set of fixed cooking facilities, other than hot plates or other portable cooking units." Subsection 22–1–6(28).

A "dwelling" is defined as "[a]ny building, or *portion thereof, which is designed for use for* residential purposes, except hotels, apartment hotels, boarding houses, lodging houses, mobile homes, tourist courts and apartment courts." Subsection 22–1–6(21).

A "family" is defined as "one or more persons occupying a dwelling unit and living as a single housekeeping unit, as distinguished from a group occupying a boarding house, lodging house, or hotel, as herein defined." Subsection 22–1–6(29) (prior to amendment April 5, 1981).

ment. Instead, it ignored the County's definitions and created its own classification of an impermissible use by concluding that Ben Hame was unlawfully "operating a commercial lodging facility." The trial court stated:

> Defendant's legal and technical arguments about the classification of the particular rental use as being too small to be a hotel but too large to be a boarding house are not sound.... High intensity overnight rental does not accord with the letter and spirit of "single family" zoning. The fact that Salt Lake County ordinances do not contain a specific definition of commercial rental use does not alter this conclusion.

The trial court erred in dismissing Ben Hame's legal arguments concerning the technical classification of this home. It is the zoning ordinance's classification of uses that determines whether a given use is lawful. Because the discretion to zone has been delegated to the County, courts must apply the legislative classifications created by the County. *See Marshall*, 141 P.2d at 709 ("If a classification is reasonably doubtful, the judgment of the court will not be substituted for the judgment of the city."). As the trial court freely admitted, there is no definition of "commercial rental use" or "commercial lodging facility" in the County's zoning code. Therefore, the trial court's conclusion that the weekly rental of a "single-family dwelling" was not permitted constitutes nothing more than the creation of a judicial exception to the County's zoning ordinance.[5] "[O]rdinarily where exceptions to a statute are enumerated in specific detail, it is indicative of legislative intent not to permit other or additional exemptions, and no other or further exceptions will usually be implied." *Broadbent v. Gibson*, 105 Utah 53, 68, 140 P.2d 939, 945 (1943). The trial court therefore exceeded its authority by effectively adding the classification, "commercial lodging facility," to the County's statutory list of prohibited uses of a single-family dwelling.

The majority likewise ignores the classifications created by the County. It *never* applies the County's definitions of "hotel," "boarding house," or "lodging house" to the facts of this case, but simply asserts that the use of the home "fell within one of these three enumerated exceptions." Because it never applies the controlling definitions, the majority never resolves the sole issue in this case: Did the weekly renting of Ben Hame's single-family home in its entirety to single groups constitute an actual impermissible use of the home as a "hotel," "boarding house," or "lodging house." It is patently unfair to fault Ben Hame for violating the County's zoning ordinance and then not identify the provision of the ordinance violated, or explain how the ordinance was violated.

The majority justifies its decision by indicating that weekly rentals have attributes similar to hotels. Such reasoning is contrary to Utah case law. If a use qualifies as a "permitted use" it is lawful, despite the existence of undesirable attributes, unless the definition of the permitted use expressly prohibits the presence of the undesirable attributes. *See, e.g., Crist v. Bishop*, 520 P.2d 196 (Utah 1974) (proposed detention school was permitted because it "came within the meaning of 'school' where there was no qualification or limitation upon that term" even though it had attributes of a correctional facility). To prove that Ben Hame was not entitled to nonconforming use status, Alta must show that the weekly rental of a single-family dwelling contains *all* the defined attributes of a prohibited use. Otherwise, it has not

---

5. Indeed, the County has actually considered and rejected a proposal to prohibit short-term rentals. The original proposal was to apply to all residential districts. The planning commission recommended the proposal favorably to the county commission, *but only after exempting forestry and recreation zones so that short-term rentals would still be allowed in those districts.* The county commission ultimately rejected the entire proposal thereby expressing a legislative intent to allow short-term rentals to continue. The majority may not, therefore, claim that the "custom or practice of certain county officials not to enforce the prohibition of short-term rentals of single family residences" does not "mirror" the legislative intent of the county commission.

shown that the use actually made of the home was unlawful.

The majority, without citing any contrary authority, simply ignores the two short-term rental cases presented to this court. The courts in both cases reasoned that short-term rentals were permitted in residential zones because they were not expressly prohibited. *See, e.g., Landing Dev. Corp. v. Myrtle Beach,* 285 S.C. 216, 329 S.E.2d 423, 424 (1985) (short-term rentals were permitted even though the ordinance required "permanent occupancy" because "no time limit is fixed in the zoning ordinance as to the length of rental property or any minimal rental period for permissible use within any zoning district."); *Puamana Management,* 631 P.2d at 1219 ("There is no definition of hotel usage in the ordinance and it is hotel usage that this case is all about."). The courts also held that the fact the short-term rentals at issue had some attributes of a prohibited use did not cause them to be prohibited. *Landing Dev.,* 329 S.E.2d at 425 (the availability of services to short-term tenants, which is an attribute of a motel, does not convert individually owned condominium units into a "motel" as defined in the zoning ordinances); *Puamana Management,* 631 P.2d at 1218–19 (even though organized short term rentals of condominium units had attributes of a hotel, it did not have all the attributes of a hotel as defined in the ordinance).

Absent a conclusion that Ben Hame violated the County's zoning code by using the home as either a "hotel," "boarding house," or "lodging house," *as defined by the County,* the majority exceeds the proper bounds of judicial restraint. The majority's holding today is nothing more than a judicial imposition of its legislative judgment that short-term rentals should not be allowed in residential zones.[6] Such a decision is directly contrary to the County's own zoning decision to allow short-term rentals.

Since Alta failed to show that weekly rentals violated a provision of the County's zoning ordinances, it failed to show that they were unlawful. Ben Hame is therefore entitled to continue its weekly rentals as a nonconforming use, and summary judgment should be reversed.

## SPOT ZONING

Ben Hame also argues that Alta's prohibition of short-term rentals in the Blackjack subdivision, while the similar surrounding property was not likewise restricted, constitutes an unreasonable, arbitrary, and discriminatory spot zoning. Without establishing the elements of a spot zone, or identifying what elements were missing, the majority holds that Ben Hame failed to adequately raise this defense. I believe Ben Hame did set forth the prima facie elements of a spot zone, and that Alta did not show that Ben Hame could not have prevailed on its spot zoning claim. Summary judgment in Alta's favor was therefore improper.

Under Utah law, "[t]he regulation of the use of property by lots *or by very small areas* is not zoning and does violence to the purpose and provisions of the statute. It would not, and could not, accomplish the purpose of the law as set forth in the statute...." *Marshall,* 141 P.2d at 708 (emphasis added). In *Marshall,* the supreme court recognized that despite its inherently suspect nature, spot zoning may be permitted if "the districts [have] been created according to a fair and rational plan." *Id.* at 710–11. The supreme court reasoned that the spot zones at issue in *Marshall* were not invalid because they were created in accordance with a clear plan. The spot zoning therefore did not fall within the scope of the impermissible spot-zoning cases which are "based upon special privileges granted, or restrictions imposed, *without regard to a unified plan." Id.* at 711 (emphasis added).

---

**6.** What constitutes an acceptable rental period? The trial court erroneously referred to these as over-night rentals when they were in fact weekly rentals. The majority holds that these weekly rentals are prohibited, but could a home be rented for two weeks? Could a home be rented for only one month with no intention of ever renewing the lease? These are legislative questions which this court is ill-equipped to answer.

Ben Hame asserts that Alta is treating a relatively small parcel of land, the Blackjack subdivision, differently than similar surrounding property without justification, or in other words, "without regard to a unified plan." Ben Hame has thereby asserted all the elements of a claim of impermissible spot zoning.[7] *See, e.g., Viso v. State,* 92 Cal.App.3d 15, 22, 154 Cal.Rptr. 580, 585 (1979); *see generally* 6 Rohan § 38.01[1][b] n. 63.

Alta, in turn, has not raised a factual challenge to a single element of Ben Hame's spot zoning defense. There is no factual dispute as to the size of the subdivision. Nor is there any dispute as to the nature of the surrounding land. In fact, counsel for Alta affirmatively asserted at the hearing that there are no factual issues involved in Ben Hame's spot zoning challenge.[8] The only issue, therefore, is whether Alta was acting in accordance with a "unified plan," as required in *Marshall.*

The majority holds, however, that Ben Hame may not challenge the summary judgment because it failed to establish a factual dispute. The majority points to the affidavit of Marcus LaFrance which "states in essence that property surround-

ing the Blackjack subdivision is zoned for single-family dwellings ... unless owners obtain a conditional use permit for short-term rentals." The majority erroneously holds that Ben Hame needed to counter LaFrance's affidavit with one of its own. LaFrance's statements of what uses were allowed in the surrounding property were clearly legal interpretations of Alta's zoning code. Expert testimony on questions of law are generally inadmissible at trial. *Steffensen v. Smith's Management Corp.,* 820 P.2d 482, 491 (Utah App.1991). LaFrance's legal statements therefore were not the proper subject of an affidavit. *See* Utah R.Civ.P. 56(e) (affidavits must "set forth facts as would be admissible in evidence"). Consequently, Ben Hame had no duty to challenge LaFrance's legal conclusions with an affidavit of its own.

This issue may only be resolved by interpreting the zoning ordinance itself.[9] A review of Alta's ordinance shows that LaFrance's legal interpretation was in error. None of the surrounding zones regulate the short-term rental of single-family dwellings. Nor is there any provision that short-term rentals are allowed in the surrounding zones if a conditional use is ob-

---

**7.** The majority's assertion that Ben Hame failed to properly present its spot-zoning defense is contrary to the record. Ben Hame claimed that this was an impermissible spot zoning in its pleadings and its motion for summary judgment. Counsel for Ben Hame clearly stated at the hearing on the motion for summary judgment, "our complaint is that we're over here with three homes, and all around us there are others [who] are being allowed to do this." Ben Hame could not be expected to do more to raise its claim of spot zoning.

**8.** Alta simply asserted that the Blackjack subdivision cannot be a spot zone because it is not an "island." *Crestview–Holladay Homeowners Assoc. v. Salt Lake County,* 545 P.2d 1150, 1151 (Utah 1976) (defining spot zones as "islands"). The subdivision is bordered on one side by another forestry and recreation zone that likewise prohibits short term rentals. (The neighboring zone also requires one unit per fifty acres because it is a mountainside and therefore is not similar surrounding property.) Thus, the subdivision is part of a peninsula rather than an island. A spot zone, however, may occur in the form of a peninsula if there is no rational reason for treating the peninsula differently than the property into which it extends. *See, e.g.,*

*Jurgens v. Huntington,* 53 A.D.2d 661, 384 N.Y.S.2d 870 (1970) (759 feet by 450 feet residential "peninsula," surrounded on three sides by business zones, was a spot zone); *Chicago Title & Trust Co. v. Village of Franklin Park,* 4 Ill.2d 304, 122 N.E.2d 804 (1954) (peninsula was a spot zone).

The majority inaccurately observes that if Ben Hame were allowed to rent out the home on a short term basis, the home itself would constitute a spot zone because it would create an island within the Blackjack subdivision. *See* majority's note 4. If Ben Hame were to prevail on its spot zoning claim, the entire subdivision would enjoy the same privileges currently being granted to the surrounding area, not just Ben Hame because the ordinance would be voided for the whole subdivision.

**9.** The majority asserts that the "zoning map" is evidence that the subdivision has been treated similarly, but it is the text of the zoning ordinances that is at issue. Before the majority may say that the subdivision is treated similarly as a matter of law, it must compare the textual restrictions placed on each zone and show that the same or similar restrictions have been placed on the surrounding property. This it has not done.

tained. As a matter of law, the Blackjack subdivision is treated differently under Alta's zoning code. Ben Hame has therefore adequately presented all of the elements of a spot zone.

In reviewing a grant of summary judgment, we must determine "whether there is any genuine issue as to any material fact, *and if there is not,* whether the plaintiffs are entitled to summary judgment as a matter of law." *Thornock v. Cook,* 604 P.2d 934, 936 (Utah 1979) (citations omitted) (emphasis added); *see also Naylor v. Salt Lake City Corp.,* 16 Utah 2d 192, 194, 398 P.2d 27, 29 (1965) (summary judgment reversed because "an affected citizen must have redress to the courts if he believes a zoning ordinance to be an abuse of discretion"). The majority ignores this rule by refusing to address the spot zoning issue for lack of an affidavit establishing a disputed fact. When a matter involves only legal issues, affidavits contribute nothing. Ben Hame need not provide any affidavit to have its legal issues addressed.[10]

> [U]nder Rule 56, Utah R.Civ.P., it is not always required that a party proffer affidavits in opposition to a motion for summary judgment in order to avoid judgment against him.... Rule 56(e) states specifically that a response in opposition to a motion must be supported by affidavits *only* in order to demonstrate that there is a genuine issue of fact for trial. Where the party opposed to the motion submits no documents in opposition, the moving party may be granted summary judgment only "if appropriate," that is, if he *is* entitled to judgment as a matter of law.

*Olwell v. Clark,* 658 P.2d 585, 586 (Utah 1982); *accord Mountain States Tel. & Tel. Co. v. Atkin, Wright & Miles, Chartered,* 681 P.2d 1258, 1261 (Utah 1984) (rejecting defendant's argument that summary judgment must be affirmed because plaintiff did not file affidavits in opposition).

The majority never addresses the question of whether Alta is entitled to summary judgment as a matter of law despite Ben Hame's prima facie spot zoning claim. When a summary judgment is attacked on its merits for misapplying the law, the prevailing party must make "a showing which precludes, as a matter of law, the awarding of any relief to the losing party." *FMA Acceptance Co. v. Leatherby Ins. Co.,* 594 P.2d 1332, 1334 (Utah 1979). *See also* Utah R.Civ.P. 56. Alta has not done this, nor has the majority even attempted to apply this rule. If the majority were to apply this rule, it would discover that Alta is not entitled to summary judgment as a matter of law.

In order to preclude Ben Hame's defense, Alta must show that its inherently suspect spot zoning is done in accordance with a rational plan. Alta has not identified its "fair and rational plan" justifying the spot zoning. The majority's affirmance of the summary judgment effectively places the burden upon Ben Hame to show that there was no "fair and rational plan." If Ben Hame must show that there is *no* "fair and rational plan," it must prove a negative. Ben Hame cannot affirm by affidavit that there was *no* "fair and rational plan" because that fact cannot be proven.[11]

**10.** I agree with the majority that the subject matter of Ben Hame's expert's affidavit is limited to the Ben Hame home itself, and is therefore of little help in determining whether the Blackjack subdivision, as a whole, was spot zoned. However, because no affidavit was even needed, it was mere surplusage. Any perceived inadequacies are therefore harmless and of no consequence in properly analyzing Ben Hame's spot zoning claim.

Similarly, any discussion in LaFrance's affidavit regarding the public purpose behind the prohibition on short-term rentals does not speak to Ben Hame's spot zoning claim because it does not address why the boundaries were drawn the way they were. While it may explain the per-

ceived need for the prohibition, LaFrance's affidavit is silent as to why the prohibition was only imposed upon the Blackjack subdivision and not the other properties along the by-pass road. The majority therefore errs in relying on LaFrance's affidavit as evidence that Alta was justified in spot zoning the subdivision.

**11.** Affidavits submitted in connection with a motion for summary judgment must "set forth such facts as would be admissible in evidence." *See* Utah R.Civ.P. 56(e). There is no admissible fact that could be submitted to prove that the spot zone was done without regard to a unified plan.

Ben Hame can merely make the legal claim. The burden is then upon Alta to identify its plan.

A zoning authority must identify the purpose for the zoning decision when spot zoning is claimed. *See, e.g., Chicago Title & Trust Co.*, 122 N.E.2d at 806 (village put forth no proof of any benefit of residential zoning in pocket of industrial use.); *O'Malia v. Township of Wilkes–Barre*, 38 Pa. Cmwlth. 121, 392 A.2d 885, 887 (1978) (township presented no evidence justifying disparate treatment of land found to be similar to surrounding land); *accord Caputo v. Board of Appeals of Somerville*, 331 Mass. 547, 120 N.E.2d 753, 754 (1954); *Rodgers v. Village of Tarrytown*, 302 N.Y. 115, 96 N.E.2d 731, 735 (1951); *Wiggers v. County of Skagit*, 23 Wash.App. 207, 596 P.2d 1345, 1350 (1979); *see generally* 6 Rohan § 38.02[3].

It is Alta, not Ben Hame, that knows why the subdivision was spot zoned. Alta therefore bears the burden of justifying its actions once a prima facie claim is made. *See Banberry Dev. Corp. v. South Jordan City*, 631 P.2d 899, 904 (Utah 1981) ("Since the information that must be used to [determine] reasonableness is most accessible to the municipality, that body should disclose the basis of its [decision] to whoever [sic] challenges the reasonableness of its [decision]."); *Staheli v. Farmer's Corp.*, 655 P.2d 680, 683 (Utah 1982) (burden of proof lies with the party most likely to have access to evidence).

The majority erroneously asserts that my recognition that Alta must present its justification for the spot zone is a new argument. However, this recognition is nothing more than an application of the "fair and rational plan" requirements set forth in *Marshall*. 141 P.2d at 708. The majority, citing *Banberry Dev. Corp.*, 631 P.2d at

904, acknowledges that a property owner does not have the burden of proving unreasonableness until "the municipality has disclosed the basis of its decision." In this case, Alta has never disclosed the basis of its decision to prohibit the short-term rental of single-family dwellings in the Blackjack subdivision while allowing the short-term rental of single-family dwellings in surrounding zones.

The need for the zoning action must be clear from the record. *Naylor v. Salt Lake City Corp.*, 17 Utah 2d 300, 410 P.2d 764, 766 (1966); *Gibbons & Reed Co. v. North Salt Lake City*, 19 Utah 2d 329, 431 P.2d 559, 566 (1967) (record was "vacant of any reasonable evidence to show the possible menace" against which the challenged provisions would protect). Summary judgment may not be granted "unless it is obvious from the evidence before the court that the party opposing judgment can establish no right to recovery." *Mountain States Tel. & Tel. Co.*, 681 P.2d at 1261. Alta has not presented any evidence of a rational, unified plan justifying the spot zoning.[12] Alta is therefore not entitled to summary judgment.

## CONCLUSION

Nonconforming use status was improperly denied because there was no finding that the single-family dwelling was being used in violation of the County's zoning code prior to annexation.

Ben Hame raised a prima facie defense of spot zoning. Alta failed to present any evidence that the spot zone was created pursuant to a fair and rational plan. The trial court therefore could not have properly ruled as a matter of law that Ben Hame

12. Alta's claimed justification for the prohibition is patently arbitrary. Alta asserts that the short-term rental prohibition is necessary to keep the state by-pass road clear in the event of an avalanche. Alta does not, however, explain *why* the same prohibition was not placed on the property across the by-pass road from the Blackjack subdivision? Alta even conceded that short term rentals are permitted in the Peruvian Estates subdivision, a single-family subdivision less than 1,000 feet away, bordering both sides of the by-pass road. Certainly the need to keep the by-pass road applies equally to both sides of the road and all along its length. Little good could come of having the road clear in front of the Blackjack subdivision if the road is impassable along the rest of its length. No one has ever explained why attempting to keep the by-pass road open only in front of the Blackjack subdivision was not arbitrary.

was precluded from raising a spot zoning defense.

Summary judgment in Alta's favor was therefore erroneously granted.