**ROCK MANOR TRUST, Plaintiff and Appellant,**

v.

**STATE ROAD COMMISSION of Utah, Defendant and Respondent.**

No. 14382.

Supreme Court of Utah.

May 21, 1976.

George K. Fadel, Bountiful, for plaintiff-appellant.

Vernon B. Romney, Atty. Gen., Leon A. Halgren, Asst. Atty. Gen., Salt Lake City, for defendant-respondent.

HENRIOD, Chief Justice.

Appeal from a district court judgment ordering removal of a highway advertising sign, after appeal thereto from a State Road Commission order[1] to remove it from private property abutting the highway. Reversed.

The sign was painted on the sides of a trapezoidal-shaped barn, whose construction was authorized by ordinance in 1959, by Farmington City, as a dual-purposed structure: As a barn and as a wall for advertising, which latter purpose was authorized by a 1965 ordinance, whence a permit was granted for use as such. In May 1967, the Utah Outdoor Advertising Act (27–12–136) was passed prohibiting such signs, as did a correlative county ordinance. Both of these bits of legislation, Title 27–12–136.7 & 11, U.C.A.1953, effective in *1971*, (L.Utah 1971, Ch. 51, Sec. 6) and Chap. 7, Sec. 7–6(2), Davis County Ordinances, provided a grandfather's clause protecting prior rights of usage,—or nonconforming usage authority. A fire destroyed most of the barn in the autumn of *1972*. It is highly significant at this juncture to note that the dual-purpose usage at that time (1971) was and had been extant for a number of years prior to the legislation mentioned above, and hence such dual usage persisted after the 1971 legislation and existed at the time of the fire in 1972.

After the fire, the plaintiff was granted a permit to build,—and in this case, of course, to rebuild,—the barn, but was denied a permit by the State to replace the sign,[2] allegedly under the Outdoor Advertising Act. The State's theory was that the permit for the barn may have been a conforming use under the local zoning ordi-

1. As per provisions of Title 27–12–136.9, Utah Code Annotated 1953, as amended.

2. Denying the permit does not affect anyone's right to demand and obtain it, if legally entitled thereto.

nance, but the sign, although a nonconforming use before the Act, was prohibited under the Act. It would seem that such a position is tenable only if the State decides to pay for such interdiction by purchase of the property (the right to use the sign), through the eminent domain route, to assure just compensation as provided under Title 27–12–136.11.

There is no question that if the barn had not burned down, the plaintiff could have indulged persistency in the use of the barn to store hay and horses, and the sign to sell the hay and horses or receive rentals for the same purpose such as publicizing Lifebuoy Soap.

We are in accord with the State's thesis that there is a trend increasingly looking with disfavor upon nonconforming uses. Such trend, however, at least theoretically, or constitutionally, cannot, or at least, should not destroy property rights, or continued lawful use of one's property,—which plaintiff espouses, and which, in truth, is the case here. This, although this author, without asking joinder by his colleagues in saying so,—is of the opinion that this country has arrived at that point in history where there is an anachronistic paradox where those who seek to preserve the civil rights of a class in some cases forget the rights of victims in the same or other cases where private property rights are involved.

The legislation involved in this case preserves to the prior user a nonconforming use. The argument of the State that the barn was almost destroyed and hence the nonconforming use has disappeared, is based on the illogic that there is no significance in such rights if the State wishes to destroy them because an act of God or happenstance has changed the form but not the substance of the right, so that a big fire destroys a grandfather's clause, but a litle fire or no fire at all does not destroy the owner's father's father's identity. The only reasonable conclusion at which we can arrive, if the law be just, is that the nonconforming use persists whether the barn is singed or swallowed up by flame or the painted words are still perceptible, though difficult to read, or completely unreadable because of a holocaust.

Without citing extensive authority, we are of the opinion that even had this barn been prostrate in ashes in complete destruction, its soul, or Phoenix, if you will—a continuing nonconforming use,—can rise and live on,—unless the barn owner does not rebuild within a reasonable time,—as required under the statute,[3]—which requirement seems reasonable enough. The statutes here provide for a nonconforming use, subject to the reasonable requirement of reconstruction within a year,—which was accomplished here. In 57 A.L.R.3d 419, et seq., and particularly the text on page 427,[4] is reflected the general reaction of the courts in cases of destruction by fire where a nonconforming use is extant. The unfairness of deciding otherwise under the statutory pronouncements in this case forcefully might be reflected in a case where, for example, one of two identical barns owned by neighbor farmers, being used for identical purposes, is destroyed by the torch of a felonious arsonist, who leaves the other alone.

We have discussed the destruction of the barn only because the State discussed it and assigned some significance to the event. The trial court did not order removal of the barn, but only the sign,[5]—and we are of the opinion that so far as a nonconforming use is concerned, the right to use the sign was of equal stature with that of the barn on whose body it was tattooed.

The judgment is reversed with instructions to either order a granting of a permit for the sign, condemn it, and pay reason-

---

3. Chap. 7, Sec. 7–6, Davis County Ordinance.

4. 87 A.L.R.2d 104; see also 18 A.L.R.2d 754.

5. For the reason stated in the Conclusions of Law, that "The nonconforming sign use ceased to exist at the time the original sign was substantially destroyed by fire . . . ."

able compensation for its use value, or adjudge otherwise, consonant with the context of this opinion.

ELLETT, CROCKETT, TUCKETT and MAUGHAN, JJ., concur.