**2014 UT App 188**

# THE UTAH COURT OF APPEALS

KIA LYN FADEL HODGSON, KRISTIN LOUISE FADEL, DOUGLAS
KELLY FADEL, AND KARA FADEL BURNETT,
Petitioners and Appellants,

*v.*

FARMINGTON CITY, ERIC MILLER, AND FARMINGTON CITY BOARD
OF APPEALS,
Respondents and Appellees.

Memorandum Decision
No. 20130702-CA
Filed August 7, 2014

Second District Court, Farmington Department
The Honorable Thomas L. Kay
No. 120701027

George K. Fadel, Attorney for Appellants

Jody K. Burnett, Robert C. Keller, and Timothy J.
Bywater, Attorneys for Appellees

SENIOR JUDGE RUSSELL W. BENCH authored this Memorandum
Decision, in which JUDGE MICHELE M. CHRISTIANSEN and SENIOR
JUDGE JUDITH M. BILLINGS concurred.[1]

BENCH, Judge:

¶1     Kia Lyn Fadel Hodgson, Kristin Louise Fadel, Douglas
Kelly Fadel, and Kara Fadel Burnett (the Fadels) appeal
the district court's grant of judgment in favor of Farmington

---

1. The Honorable Russell W. Bench and Judith M. Billings, Senior
Judges, sat by special assignment as authorized by law. *See
generally* Utah Code Jud. Admin. R. 11-201(6).

City, Eric Miller, and the Farmington City Board of Appeals (the Board) on the Fadels' petition for review of the Board's determination that the Fadels' barn (the Barn) violated the Uniform Code for the Abatement of Dangerous Buildings (the UCADB). *See* Uniform Code for the Abatement of Dangerous Buildings (1997), *available at* https://law.resource.org/pub/us/code/ibr/icc.ucadb.1997.pdf.[2] We affirm.

¶2 On June 27, 2012, after determining that the Barn, which was used as a sign, violated a number of UCADB provisions, Miller, a building official for Farmington City, issued a Notice and Order to Repair or Demolish Building (the Notice) to the Fadels. The Notice required that the Fadels either repair the Barn or demolish it. The Fadels filed an appeal with the Board, which affirmed Miller's decision. The Fadels then petitioned the Second District Court for judicial review of the Board's decision. In June 2013, the district court granted judgment in favor of Farmington City, Miller, and the Board and dismissed the Fadels' petition. The Fadels appeal.

I. Standard of Review

¶3 Before examining the Fadels' substantive arguments, we must resolve the parties' dispute regarding the appropriate standard of review to apply in this case. The district court relied on section 10-9a-801 of the Utah Code, which pertains specifically to land use decisions and limits the district court's review to a determination of "whether or not the decision, ordinance, or regulation is arbitrary, capricious, or illegal." Utah Code Ann. § 10-9a-801(3)(a)(ii) (LexisNexis 2012). We are subject to the same

---

2. The Uniform Code for the Abatement of Dangerous Buildings has been adopted and incorporated by reference into the Farmington City Municipal Code. *See* Farmington City, Utah, Municipal Code § 10-2-100 (2013), *available at* www.farmington.utah.gov/downloads/government/title10.pdf.

standard of review as the district court because "[w]hen a lower court reviews an order of an administrative agency and we exercise appellate review of the lower court's judgment, we act as if we were reviewing the administrative agency decision directly." *Carrier v. Salt Lake Cnty.*, 2004 UT 98, ¶ 17, 104 P.3d 1208 (citation and internal quotation marks omitted).

¶4 The Fadels assert that because the Barn is a sign, the Board's decision to order it repaired or demolished is not a "land use decision" within the meaning of section 10-9a-801. They refer us instead to section 10-3-703.7 of the Utah Code, which pertains to review of municipal administrative proceedings generally. The previous version of section 10-3-703.7 permitted individuals "adversely affected by an administrative proceeding" conducted by a municipal authority to petition a district court for review of the decision and, like section 10-9a-801, provided that such a review would be limited to determining whether the administrative decision was "arbitrary, capricious, or illegal." Utah Code Ann. § 10-3-703.7(5)(a)(i)–(ii) (LexisNexis 2007). However, in 2012, the statute was repealed and reenacted, and the legislature removed all provisions pertaining to judicial review of administrative decisions, leaving only the following language: "(1) A municipality may adopt an ordinance establishing an administrative proceeding to review and decide a violation of a civil municipal ordinance. (2) An ordinance adopted in accordance with Subsection (1) shall provide due process for parties participating in the administrative proceeding." *Id.* § 10-3-703.7 (2012).

¶5 The Fadels assert that the revisions to section 10-3-703.7 removing the "arbitrary, capricious, or illegal" language indicates that the legislature did not believe that standard of review complied with due process. However, the decision to amend this statute does not appear to have had anything to do with the petition for judicial review and standard of review provisions contained in the previous version of section 10-3-703.7(5), but rather arose out of concern over possible misinterpretation of

subsection (2)(e), relating to civil violations committed in conjunction with criminal violations. *See* Audio Recording of Senate Business and Labor Standing Committee Meeting, 59th Leg., Gen. Sess. (Feb. 29, 2012) (statement by bill sponsor Rep. Kraig Powell); *see also* Utah Code Ann. § 10-3-703.7(2)(e) (2007). Furthermore, the "due process" referred to in the current version of section 10-3-703.7 relates to the administrative procedures established by a municipality, not judicial review of agency decisions. And the fact that the "arbitrary, capricious, or illegal" standard remains in other provisions of the Utah Municipal Code indicates that the legislature approves of this standard of review and belies the Fadels' argument that it does not afford them due process. *See, e.g.*, Utah Code Ann. § 10-2-417(3) (LexisNexis 2012); *id.* § 10-8-2(3)(b) (Supp. 2013); *id.* § 10-9a-801(3)(a)(ii) (2012).

¶6 While the legislature's removal of the standard of review language from section 10-3-703.7 admittedly leaves us with some uncertainty regarding the general standard of review it intended for us to apply in appeals from municipal administrative determinations, we are not convinced that the legislature necessarily intended that we no longer employ the "arbitrary, capricious, or illegal" standard. The current version of section 10-3-703.7 says nothing about the standard of review and has not provided us with an alternative standard to replace the one contained in the previous version. Furthermore, as noted above, the legislature left this standard of review in other provisions of the Utah Municipal Code. Moreover, the Fadels have failed to identify any reasonable alternative standard of review that we should employ apart from stating generally that they should be afforded "due process." Thus, even if we were to accept the Fadels' assertion that the Board's decision was not a land use decision subject to the standard of review explicitly prescribed by section 10-9a-801, we are not convinced that the "arbitrary, capricious, or illegal" standard of review is inappropriate in the context of this case.

¶7 Accordingly, like the district court, we review the Board's decision only to determine whether it was arbitrary, capricious, or

illegal. A decision "is arbitrary or capricious only if it is not supported by substantial evidence in the record" and "is illegal if it violates a law, statute, or ordinance in effect at the time the decision was made." *Fox v. Park City*, 2008 UT 85, ¶ 11, 200 P.3d 182 (citations and internal quotation marks omitted).

## II. Applicability of the UCADB

¶8    The Fadels' first substantive argument asserts that the Barn is a sign, not a "building or structure," and that it is therefore not subject to the UCADB. *See generally* Uniform Code for the Abatement of Dangerous Buildings § 302 (1997) (providing that "any building or structure" which exhibits "any or all of the conditions or defects" described by the UCADB "shall be deemed to be a dangerous building"). The Barn has stood on the Fadels' property since 1959 and was erected "as a dual purpose building to serve as a barn and as a base for signs." In 1967, such signs were prohibited by the Utah Outdoor Advertising Act, but the Act contained a grandfather clause exempting nonconforming uses existing at the time the Act was passed. *See Rock Manor Trust v. State Road Comm'n*, 550 P.2d 205, 205 (Utah 1976). In 1972, most of the Barn was destroyed by a fire.[3] *Id.* Although the Fadels were permitted to rebuild the Barn, they were denied a permit to replace the sign in light of the Outdoor Advertising Act. *Id.* The Fadels filed suit, and the Utah Supreme Court, in *Rock Manor Trust v. State Road Commission*, 550 P.2d 205 (Utah 1976), upheld their right to continue their nonconforming use of the Barn after it was rebuilt. *Id.* at 206.

¶9    The Fadels assert that the supreme court conclusively determined that the Barn is a sign and that its holding makes the issue of whether the Barn is a sign or a structure res judicata. *See generally D'Aston v. Aston*, 844 P.2d 345, 350 (Utah Ct. App. 1992) ("When there has been an adjudication, it becomes res judicata as

---

3. According to the Fadels, since the fire, the Barn has been used only as a sign, not a barn.

to those issues which were either tried and determined, or upon all issues which the party had a fair opportunity to present and have determined in the other proceeding." (citation and internal quotation marks omitted)). However, the supreme court made no such determination. The court determined only that the Fadels' nonconforming use of the Barn as a sign was not extinguished by the fire and continued to be permitted pursuant to the Outdoor Advertising Act's grandfather clause. The determination that the Barn could be used as a sign does not necessarily preclude the Barn from also being classified as a structure subject to the requirements of the UCADB, and the Fadels present no argument explaining why the Barn could not be classified as both a structure and a sign. Indeed, such a loophole would contradict the purpose of the UCADB to protect occupants and the general public from the threat dangerous structures may pose to their "life, limb, health, morals, property, safety or welfare." *See* Uniform Code for the Abatement of Dangerous Buildings § 102.1. The Board did not find that the Barn was not a sign or that it could not continue as a nonconforming use; it found only that the Barn was "a structure within the meaning of the [UCADB] to which the provisions of the [UCADB] apply." Thus, we reject the Fadels' assertion that the Barn was not subject to the UCADB.[4]

### III. Sufficiency of the Notice

¶10    The Fadels next argue that the Notice provided by Miller was insufficient because it gave them only two options: repair the Barn or demolish it. Pursuant to section 403 of the UCADB, there are three possible options that a building official may give the owner of a structure that is declared to be dangerous: (1) repair the building in accordance with the building codes, (2) demolish the building "at the option of the building owner," and (3) vacate and

---

4. Apart from their res judicata argument, the Fadels provide no reasoning for their bare assertion that the Board "[wrongfully] applied the [UCADB] to the uninhabited sign structure."

secure the building against entry "[*i*]*f the building does not constitute an immediate danger to the life, limb, property, or safety of the public.*" *Id.* § 403 (emphasis added). The Fadels argue that the Notice should have given them the option to vacate and secure the Barn against entry rather than repair or demolish it. However, this option is available only where "the building does not constitute an immediate danger," *see id.*, and the Notice explained that the defects Miller had identified were such "that life, health, property or safety of the public [were] endangered." Further, despite mandating that the Barn "be secured and maintained against entry immediately," the Notice went on to indicate that repair or demolition was ultimately necessary. Thus, Miller clearly did not consider vacating and securing the building to be an adequate remedy in light of the danger posed. The Fadels point out that they have vacated and secured the Barn and assert that this should be sufficient to comply with the UCADB. However, the relevant question is not whether the Fadels have taken steps to vacate and secure the Barn, but whether the condition of the Barn makes it so dangerous that vacating and securing it is an inadequate remedy. The Fadels have failed to explain how the potential remedy of vacating and securing the Barn was even a viable option under the circumstances, let alone a necessary one. Thus, we see no fault in the Notice.

## IV. Adequacy of the Board's Factual Findings

¶11    The Fadels next challenge the adequacy of the Board's factual findings. The Board found that regardless of whether the Barn also constituted a sign, it was "a structure within the meaning of the [UCADB] to which the provisions of the [UCADB] apply." It further found that Miller's determination "that the structure meets 13 of the 18 conditions or defects" identified by section 302 of the UCADB as dangerous conditions requiring remediation, specifically "numbers 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 16, 17, and 18," *see id.* § 302, was "supported by substantial evidence in the record, including both the Notice and Order and the evidence presented in the form of the testimony of Building Official Eric Miller, structural

engineer Chris Kimball and Fire Chief Guido Smith during the hearing regarding this matter on September 19, 2012."

¶12    The Fadels assert that these findings were inadequate. The Board found that the Barn exhibited all thirteen of the defects found by Miller and identified the testimony it had relied on in making its findings. The fact that the Board referred to the defects by number, rather than recounting each of them in detail, does not render its findings inadequate. Indeed, the Board's identification of the defects it found and the sources on which it relied for its findings sufficiently "dislose[d] the steps by which the ultimate conclusion on each factual issue was reached." *See Nyrehn v. Industrial Comm'n*, 800 P.2d 330, 335 (Utah Ct. App. 1990) (citation and internal quotation marks omitted).

## V. Substantial Evidence

¶13    Because we determine that the Board's factual findings were adequate, it was the Fadels' burden to "marshal all of the evidence supporting the [Board's] findings and show that despite the supporting facts and in light of the conflicting evidence, the findings are not supported by substantial evidence." *Beaver Cnty. v. Utah State Tax Comm'n*, 916 P.2d 344, 355–56 (Utah 1996) (citations and internal quotation marks omitted). *See generally id.* at 356 (defining substantial evidence as "that quantum and quality of relevant evidence that is adequate to convince a reasonable mind to support a conclusion" (citation and internal quotation marks omitted)). The Fadels have failed to do so. Rather than marshal the evidence supporting the Board's conclusion, they point us to evidence undermining its conclusion in order to show that the evidence was not "clear, uncontroverted and capable of one conclusion." *See generally Nyrehn*, 800 P.2d at 335 (explaining that an agency decision unsupported by adequate factual findings will be deemed arbitrary and capricious "unless the evidence is clear, uncontroverted and capable of only one conclusion" (citation and internal quotation marks omitted)). But because we determine that the Board's findings were adequate, the Fadels' approach is

misguided. By failing to marshal the evidence in this case, the Fadels' have "fail[ed] to carry [their] burden of persuasion on appeal." *State v. Nielsen*, 2014 UT 10, ¶ 42, 326 P.3d 645. "In order to determine whether [the] factual findings were [unsupported by substantial evidence] we would have to comb the . . . record, assemble all the relevant evidence, identify how the [Board] used this evidence to support the finding in question and determine whether [its] decision was [arbitrary and capricious]." *See Chen v. Stewart*, 2004 UT 82, ¶ 82 n.16, 100 P.3d 1177, *abrogated on other grounds by Nielsen*, 2014 UT 10. This we decline to do. Thus, because the Fadels fail to carry their burden of persuasion, "we assume that the evidence supports the [Board's] findings."[5] *Id.* ¶ 80.

## VI. Form of Decision

¶14    Finally, the Fadels argue that the Board's decision did not comply with section 605.7 of the UCADB, which requires that a decision by an appeals board "be in writing and . . . contain findings of fact, a determination of the issues presented, and the requirements to be complied with." Uniform Code for the Abatement of Dangerous Buildings § 605.7 (1997). The Fadels assert that the Board's decision contained neither findings of fact nor the requirements to be complied with. We have already determined that the Board's decision contained adequate findings of fact;

---

5. The Fadels make more detailed arguments with respect to the nuisance conditions identified under numbers 12, 17, and 18 of section 302 of the UCADB and the instability conditions identified under numbers 5, 9, 12, and 13. However, in doing so, they merely attempt to reargue the evidence, pointing only to evidence that supports their position, and have again failed to marshal the evidence supporting the Board's findings. And even if we were to determine that the Board's findings with respect to these conditions were not supported by substantial evidence, the Board's decision would still be supported by its findings that other unsafe conditions existed relating to numbers 4, 6, 7, 8, 10, 11, and 16.

however, the Fadels appear to be correct that the Board did not explicitly indicate the requirements to be complied with. Nevertheless, by affirming Miller's decision, the Board implicitly indicated its intent that the Fadels comply with the remedies outlined in the Notice, i.e., repair or demolition, and we decline to set aside the Board's decision merely because these requirements were not explicitly repeated in that decision. *See generally MacKay v. Hardy*, 896 P.2d 626, 629 (Utah 1995) ("[I]t is the duty of the court to look to substance rather than to form." (citation and internal quotation marks omitted)).

## VII. Conclusion

¶15    We determine that the question of whether the Barn could be considered a structure subject to the UCADB was not made res judicata by the supreme court's decision in *Rock Manor*. We also determine that the Notice provided to the Fadels was not improper and that the Board's findings of fact were adequate. Because the Fadels failed to carry their burden of persuasion by marshaling the evidence supporting the Board's findings, we reject their assertion that those findings were not supported by substantial evidence. Finally, we determine that because the Notice informed the Fadels of the requirements to be complied with, the Board's affirmation of the Notice was sufficient to comply with section 605.7 of the UCADB. We therefore agree with the district court that the Board's decision was not arbitrary, capricious, or illegal, and we accordingly affirm the district court's ruling.

————————